**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

HAJI OSMAN SALAD,

       Plaintiff,

  v.

HEATHER WEYKER, *in her individual*          Case No. 16cv1242 (JNE/TNL)
*capacity as a St. Paul Police Officer*;        ORDER
JOHN BANDEMER, *in his individual*
*and official capacities as a St. Paul*
*Police Sergeant*; ROBERT ROES 1-3, *in*
*their individual and official capacities as*
*supervisory members of the St. Paul*
*Police Department*; THE CITY OF ST.
PAUL,

       Defendants.

## I.      INTRODUCTION

Plaintiff Haji Osman Salad alleges violations of his constitutional rights in an

investigation that led to his indictment by a federal grand jury and his subsequent arrest.  He sues

Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota;

John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's

supervisor; Robert Roes 1-3, who are allegedly supervisory St. Paul police officers; and the City

of St. Paul ("St. Paul").  Weyker and Bandemer move to dismiss Salad's complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified

immunity grounds.  Dkt. No. 40.  St. Paul moves on behalf of the City of St. Paul and Robert

Roes 1-3 for judgment on the pleadings pursuant to Rule 12(c).  Dkt. No. 43.

The investigation at the core of Salad's civil complaint targeted a suspected venture

involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio.  The

investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle

District of Tennessee in 2010-2011 ("Tennessee Case").  Salad alleges that Weyker fabricated

evidence about him and others throughout the investigation, resulting in a tainted indictment that

was further corrupted by Weyker's continuing deception, and causing his arrest and detention

without probable cause.

Nineteen of Salad's co-defendants in the Tennessee Case bring separate suits similarly

alleging constitutional violations, and a twenty-first person brings another related civil suit.  The

parties agreed to coordinated briefing on the Defendants' motions.  The Court assumes

familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No.

16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's

discussion verbatim here.  Salad is represented by the same attorneys as Osman, and their

attorneys filed consolidated opposition papers to the motions.  *See* Osman Pls.' Opp. to St. Paul

Mot., Dkt. No. 52; Osman Pls.' Opp. to DOJ Mot. to Dismiss ("Osman DOJ Opp."), Dkt. No. 58.

The Court held a hearing on the motions on May 3, 2017, and now grants both motions.[1]

## II.     APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted

"only when there is no dispute as to any material facts and the moving party is entitled to

judgment as a [m]atter of law."  *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation

omitted).  To survive a Rule 12 motion, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation omitted); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d

918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016).  *See also* Osman Op. 3-4.

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the March 6, 2017 Order Permitting the Osman Plaintiffs to Amend Complaints.  Dkt. No. 62.  Pursuant to that order, Salad filed a First Amended Complaint [Dkt. No. 63] ("FAC"), which is thus the operative complaint subject to these Rule 12 motions.

### III.  ALLEGATIONS

Most of the salient allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case.  *See, e.g.*, Osman Op. 4-8.  The Court briefly recounts some allegations in Salad's First Amended Complaint and other facts gleaned from the Tennessee Case record.

In 2008, Salad met Jane Doe Two, who eventually became a witness and alleged victim of sex trafficking in the Tennessee Case.  FAC ¶ 10.  The two struck up a relationship that was occasionally physical.  *See* FAC ¶ 11.  Salad has always understood Jane Doe Two to be "approximately the same age," *see* FAC ¶ 14.

In April 2009, Salad, Jane Doe Two, and others travelled to Nashville, Tennessee, and during the trip, Jane Doe Two "engaged in consensual sex with men (*i.e.*, alleged co-conspirators) other than Salad, apparently because she was angry that Salad was ignoring her." FAC ¶¶ 17-18.  "Salad is not aware of any of his alleged co-conspirators paying a fee or providing anything of value in exchange for engaging in sex acts with Jane Doe Two, and to the best of Salad's knowledge such exchange never occurred."  FAC ¶ 19.  During the trip, Jane Doe Two was reported as a runaway; the Nashville police took Jane Doe Two, Salad, and others into custody; and Salad was charged in Tennessee state court with contributing to the delinquency of a minor, but the state charges against Salad were dismissed in April 2010.  FAC ¶¶ 21-22, 26. When the Nashville police questioned Jane Doe Two, she initially said that she had engaged in consensual sex, "initially [saying] nothing to the officers about engaging in sex acts in exchange for payment, nor about going anywhere against her will," and wrote out a statement to that effect, FAC ¶ 23, but when Jane Doe Two spoke on the phone with Weyker—who was the lead investigator on the case, FAC ¶ 36—Jane Doe Two "changed her version of events to claim that

her sex acts over the past few days had been prostitution and sex trafficking," FAC ¶ 25 (quoting

*United States v. Fahra*, 643 Fed. Appx. 480, 485 (6th Cir. 2016)).

Even after the state charges were dismissed, Weyker remained intent "on pursuing

charges against Salad, in part because he declined to become a witness and provide false

evidence supporting Weyker's phony sex-trafficking conspiracy." FAC ¶ 27. "In fact, Weyker

knew that Salad had never entered any such conspiracy, and so she set about manufacturing

evidence to try to prove otherwise." *Id.* "Despite the dismissal of the [state] charges, Weyker

made the April 2009 trip a cornerstone of her fabricated sex-trafficking conspiracy." FAC ¶ 28.

"Weyker used the false and manufactured statements she solicited from Jane Doe Two to support

allegations in the Indictment that Salad and others kidnapped and transported Jane Doe Two

from Minneapolis to Nashville for the purpose of causing Jane Doe Two to engage in

commercial sex acts." *Id.*

On October 20, 2010, Salad was indicted in the Tennessee Case. FAC ¶ 29. He was

charged in nine counts. *See* Indictment ("Ind't"), *United States v. Salad*, No. 3:10cr260, Dkt.

No. 3 (M.D. Tenn. Oct. 20, 2010); [2] *see also* FAC ¶ 29. Two counts alleged participation in a

sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2). Two counts

alleged recruitment or attempted recruitment of a minor under the age of 14 (Jane Doe Two) for

sex trafficking (Counts 12 and 13). Two counts, Counts 3 and 4, alleged obstruction of justice.

Count 16 alleged that Salad conspired to transport a stolen vehicle in interstate commerce in

February 2010. Ind't ¶107. Count 17 alleged that in February 2010 through September 2010,

Salad conspired to use a false identification in connection with stealing and transporting a

---

[2] Because the indictment is a matter of public record, the Court may take judicial notice
of it. *Greenman*, 787 F.3d at 887.

vehicle.  Ind't ¶¶ 113-15.  Finally, Count 18 alleged that from 2007 through September 2010, Salad conspired to commit credit card fraud.  *E.g.*, Ind't ¶¶ 117, 120-23.[3]

The indictment's allegation that Jane Doe Two was a minor was false.  "Weyker portrayed Jane Doe Two as a minor despite knowing—and it being obvious—that Jane Doe Two was older than her alleged age, and, as a result, the U.S. Government alleged" in its indictment that Jane Doe Two was a minor.  FAC ¶ 12.  Weyker also know the allegations in the indictment about the April 2009 trip to Nashville with Jane Doe Two to be false; she had "manipulated, coerced, and pressured Jane Doe Two into fabricating evidence and testimony that her visit to Nashville with Salad and others was for the purpose of commercial sex," which was untrue. FAC ¶ 44.  Similarly, "Weyker also fabricated evidence that Salad had entered an agreement with some or all of the other co-defendants to sex-traffic minors and adults for financial gain, when Weyker knew that Salad had never entered into any such agreement regarding sex-trafficking of anyone for any reason."  FAC ¶ 45.

Salad was arrested based on the indictment, and because of the alleged violations of 18 U.S.C. § 1591, he "was subject to presumptive detention and was ordered detained pending trial."  FAC ¶ 32.  For some period while he was awaiting trial, Salad was released to home monitoring, but he was held in custody for a total of about four years.  FAC ¶ 62.

Nine of Salad's co-defendants went to trial in Spring 2012, and the jury rendered its verdict in early May 2012.  FAC ¶¶ 48-49; *United States v. Adan*, 913 F. Supp. 2d 555, 560 (M.D. Tenn. 2012).  Salad was originally set to stand trial with these co-defendants, but elected to be tried later with some other co-defendants.  *Adan*, 913 F. Supp. 2d at 559.  The jury acquitted six of the defendants of all charges, and in December 2012, the district court granted

---

[3] Salad was charged in the same counts in a First Superseding Indictment.  *See United States v. Salad*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010).

Federal Rule of Criminal Procedure 29 motions for acquittal by the other three defendants on the basis of a variance. *Adan*, 913 F. Supp. 2d at 560, 579; *see also* FAC ¶ 49. In March 2016, the Sixth Circuit Court of Appeals issued an order affirming the district court's Rule 29 order. *United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016); *see* FAC ¶ 51. The federal charges against Salad were then dismissed. FAC ¶ 60.

Like Osman, Salad alleges that the charges of a widespread sex-trafficking conspiracy were baseless and that Weyker fabricated "the overwhelming majority of the critical evidence supporting the indictments in this alleged conspiracy," FAC ¶¶ 34-35; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Two, into lying, FAC ¶¶ 42-44; that Weyker was motivated to falsify evidence by a desire for glory, FAC ¶ 1; that Weyker "worked with almost no supervision by her employer and principal" the St. Paul Police Department, FAC ¶ 46; and that indications of Weyker's fabrication included her rough notes, questions surrounding Jane Doe Two's age and her trip to Nashville in April 2009, the results of the Spring 2012 trial, and remarks about Weyker and the case by the district and appellate courts in the Tennessee Case, FAC ¶¶ 12-13, 25, 28, 39-44, 49-53, 55.

## IV.     SUMMARY OF ARGUMENTS

A summary of the parties' arguments on these consolidated motions is included in the Osman Opinion at pages 8-10.

## V.     LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Salad's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. His complaint is that "[b]ut for the evidence Weyker fabricated, no probable cause existed to detain or otherwise restrict [his]

liberty." FAC ¶ 1. In other words, he complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Salad's. *Id.* at 920 n.8. Thus, because he challenges his pretrial detention, his claim is under the Fourth Amendment, but if he had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, his claim would then be under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out." *Id.* Salad's claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion).

The Court thus rejects the substantive due process claims on the basis of *Manuel* and *Albright*, but it also notes that to the extent these claims rely on the allegation that Salad was held in custody, rather than released on bond, because of the fabricated evidence supporting the sex-trafficking conspiracy charges, *see* FAC ¶ 32, this argument for a substantive due process claim fares no better. The Bail Reform Act requires a court to hold a detention hearing if the government moves to detain a pretrial defendant in a case that charges a violation of 18 U.S.C. § 1591. 18 U.S.C. § 3142(f)(1)(A) (2008). In that hearing, a number of procedural rights are afforded by the statute. *See id.* § 3142(f); *United States v. Stephens*, 594 F.3d 1033, 1038 (8th Cir. 2010). The court must consider (1) "the nature and circumstances of the offense charged, including whether the offense is . . . a violation of section 1591," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). If the court determines by clear and convincing evidence that

there is no combination of conditions that could "reasonably assure the appearance of such

person as required and the safety of any other person and the community," *id.* § 3142(f), then the

court "shall order" the defendant's detention pending trial, *id.* § 3142(e). Although in a case in

which the judge "finds that there is probable cause to believe that the person committed

. . . an offense involving a minor victim under section . . . 1591," it "shall be presumed" that

detention is necessary, that presumption may be rebutted by other evidence at the detention

hearing. *Id.* § 3142(e)(3)(E). Moreover, the defendant's presumption of innocence remains in

force at the detention hearing. *Id.* § 3142(j). Salad does not allege any facts about his detention

hearing. Even crediting his allegations that Weyker fabricated evidence of a sex-trafficking

conspiracy and fooled the grand jury into indicting him on those charges, *see* FAC ¶ 38, the

Court could not reasonably infer that the sex-trafficking-related charges caused him to be held in

custody, because the § 3142 presumption was rebuttable and multiple factors had to be

considered. "The Government must first of all demonstrate probable cause to believe that the

charged crime has been committed by the arrestee, but that is not enough." *United States v.*

*Salerno*, 481 U.S. 739, 750 (1987). "In a full-blown adversary hearing, the Government must

convince a neutral decisionmaker by clear and convincing evidence that no conditions of release

can reasonably assure the safety of the community or any person." *Id.* Salad was entitled, for

example, to an evaluation of the weight of the evidence against him and an assessment of his

history and characteristics, yet he does not allege that Weyker played any role in tainting any

such separate judicial determinations. The silence in Salad's complaint on this topic leaves open

the possibility that he waived his right to a hearing. More importantly, the record reflects that

even after the April 2012 trial, a panel of the Sixth Circuit found that Salad and five of his co-

defendants should remain in custody pending trial or retrial, based in part on an evaluation of the

weight of the evidence at trial.  *United States v. Fahra*, No. 13-5296, Dkt. No. 61-1 (6th Cir.

Dec. 18, 2013) (submitted in this case at DOJ Reply Ex. BB, Dkt. No. 65-1) (noting also at page

9 that "some of the defendants waived their initial detention hearings").  This fact further

reinforces a conclusion that Salad fails to plausibly allege substantive due process violations on

the basis of a § 3142 presumption.

Under the Fourth Amendment analysis, the Court must decide whether Salad plausibly

alleges that the Defendants violated his right to be free from unreasonable seizure by arresting

and detaining him without arguable probable cause, based on fabricated evidence.[4]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest

pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks*

*v. Delaware*, 438 U.S. 154 (1978).  *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir.

2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013).  Thus, the court

considers whether there were deliberately or recklessly false statements made in support of a

finding of probable cause and whether those statements were necessary to the finding of probable

cause.  *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir.

2014).  The court also considers whether material information was omitted with the intent to

mislead or with reckless disregard as to whether the omission was misleading.  *See Williams*, 772

F.3d at 1312; *Hawkins*, 759 F.3d at 959.  If, setting aside the false statements (or adding in the

omitted information), there was no probable cause to arrest, then the arrest violated the Fourth

Amendment.  *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-*

*Cuevas*, 723 F.3d at 105.  Probable cause "exists when the totality of the circumstances at the

---

[4] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the
question of whether Salad's claim should have been brought under § 1983 or *Bivens*.  *See* Osman
Op. 13-17.

time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement).[5]  "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899.  "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (quoting *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994)).

### a. Analysis of Salad's Claim Under the Fourth Amendment

In considering whether Salad plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also properly considers the Tennessee Case court record in assessing the pleadings.  *See, e.g.*, *Greenman*, 787 F.3d at 887.

---

[5] An arresting officer who had "a mistaken but objectively reasonable belief" that probable cause existed would be entitled to qualified immunity.  *McCabe v. Parker*, 608 F.3d 1068, 1078 (8th Cir. 2010).  Salad alleges, however, that there was no mistaken belief—rather, Weyker knowingly fabricated the material evidence.  The "arguable probable cause" standard arguably would not apply if Weyker intentionally misled, but Salad does not press the point, *see* Osman DOJ Opp. 34-35, and it is not dispositive here.

Salad's core allegations closely track Osman's. In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and Salad cite. *See* Osman Op. 25-33. In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim over the *Iqbal* plausibility line. The Court further found that the fact that Osman was also indicted on charges of obstruction of justice relating to the prosecution of the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. Salad's case is different.

Weyker and Bandemer argue that even if Salad plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that he was also indicted in non-trafficking-related charges defeats his Fourth Amendment claim. They argue that Salad fails to plausibly allege that there was not probable cause to arrest him on the other crimes for which he was charged. *See* DOJ Br. 65-68. Salad counters that it is the Defendants' burden to establish their affirmative defense of arguable probable cause and that "too many fact issues remain at this stage for the Court to rule on the effects that other charges may have had on the Osman Plaintiffs' unlawful arrests." *See* Osman DOJ Opp. 34. Moreover, Salad argues there was no arguable probable cause to arrest him in 2010 "without the fabricated evidence," as shown by the fact that the government ultimately dismissed all charges against all remaining co-defendants. *See id.* at 35.

Salad clearly and repeatedly alleges that there was never any "conspiracy to recruit and transport minors for the purpose of engaging in commercial sex acts," *e.g.*, FAC ¶ 29, but he never alleges that he was not in a conspiracy to transport a stolen vehicle (Count 16), in a

conspiracy to use false identification (Count 17), or in a conspiracy to commit credit card fraud (Count 18). Those counts in the indictment are bolstered by numerous specific allegations of overt acts by Salad. *See, e.g.*, Ind't ¶¶ 111-12, 116, 120-23, 130-32, 135-36. Salad's complaint does not allege any facts to support an inference that any of the indictment's allegations were incorrect or based on false evidence. The absence of pleaded facts relating to these charges contrasts with the specificity of some of Salad's allegations relating to the sex-trafficking-related charges—for example, his allegations denying that any sex-trafficking occurred with Jane Doe Two during the April 2009 trip to Nashville. Nor does Salad ever outright allege, even in a conclusory fashion, that there was no probable cause to arrest him on the separate charges in Counts 16, 17, or 18. The grand jury's indictment of him in those charges "conclusively determines the existence of probable cause" on those counts, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any plausible allegations that the indictments on those counts were tainted by fabrication of evidence.[6] Further, in a criminal case as lengthy and complicated as the Tennessee Case, it is not reasonable to assume from the Government's eventual dismissal of all charges, after an appeals court affirmed the grant of three Rule 29 motions on the basis of a variance, that there was never probable cause to support *any* of the charges.

Salad's complaint must fail because he does not plausibly allege that there was no probable or arguable probable cause to arrest him on the non-sex-trafficking-related counts in which he was indicted. Even if there were no probable cause to arrest him based on the allegedly spurious sex-trafficking-conspiracy charges, there is no Fourth Amendment violation where

---

[6] The Court further notes that one of his co-defendants pleaded guilty to the credit-card conspiracy charged in Count 18. *See United States v. Nur*, No. 3:10cr260, Dkt. No. 2870 (M.D. Tenn. Oct. 5, 2012).

there is probable cause to arrest "for the violation of some other law." *Greenman*, 787 F.3d at

889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that

there is no Fourth Amendment violation if there is probable cause to arrest based on any criminal

offense, even if the officer's subjective reason for arresting was a different and unrelated

offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011).

The Court acknowledges Salad's grievance with having served some time in custody

rather than out on bond. But detention comes in different forms and is a restraint on liberty in

any form. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("Even pretrial release may be

accompanied by burdensome conditions that effect a significant restraint of liberty.").

Defendant Weyker is entitled to qualified immunity. Salad has failed to plausibly allege

a constitutional violation.

### b. Supervisory Liability

Salad sues Bandemer and Robert Roes 1-3 in their individual capacities as supervisors.

He alleges that they were deliberately indifferent to but not direct participants in Weyker's

alleged violations.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only

liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808

F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in

an alleged constitutional violation is sued for failure to train or supervise the offending actor, the

supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1)

received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was

deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*,

700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a

pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.*  The notice prong requires that "[t]o impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

First, given the Court's conclusion that Salad has not adequately alleged a constitutional violation by Weyker, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

Moreover, Salad's complaint, which is practically identical to Osman's complaint as to the supervisory liability allegations, likewise contains few allegations—and fewer well-pleaded facts—regarding supervisory liability.  Like Osman, Salad alleges that Bandemer and the Robert Roes had supervisory responsibility over Weyker, *see, e.g.*, FAC ¶¶ 7, 9; that the investigation was very important to the St. Paul Police Department vice unit, *id.* ¶ 36; and that "[b]y February 12, 2012, at the latest, Bandemer and the other supervisory Defendants and the City had actual notice of the falsity of the allegations put forth by Weyker," based on district court orders including the memorandum-order at Dkt. No. 1392 and because of news coverage, *id.* ¶¶ 47, 54-55.  Like Osman, Salad cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his supervisory liability notice allegations.  FAC ¶ 55.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice.  *See* Osman Op. 37-41.   Nor do they establish a pattern of unconstitutional acts by Weyker.  Ignoring conclusory or unsupported allegations, Salad does not

14

allege any other similar acts by Weyker before her Tennessee Case investigation that could show

a pattern about which Bandemer or the Robert Roes personally knew.

The allegations fail to state a claim for supervisory liability, and Bandemer and Robert

Roes 1-3 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Salad sues St. Paul as well as Bandemer and the Robert Roes in their official capacities

for municipal liability under *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S.

658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely

by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage

with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff

must plead "allegations, reference, or language by which one could begin to draw an inference

that the conduct complained of . . . resulted from an unconstitutional policy or custom."

*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation

omitted). "Misconduct among a municipality's employees must be 'continuing, widespread,

[and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also,

"the municipality will not be liable unless policymaking officials exhibit '[d]eliberate

indifference to or tacit authorization of such conduct . . . after notice to the officials of that

misconduct.'" *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy

or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional

rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual

employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

Salad alleges that Weyker acted alone, with little supervision. *See, e.g.*, FAC ¶ 46. He does not allege facts to support conclusory allegations that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations. For the same reasons given in the Osman Opinion, *see* Osman Op. 41-42, Salad's municipal liability allegations also fail.

## VI.    Conclusion

Defendants are entitled to qualified immunity on all counts, because Salad's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010). The Court will not grant leave to amend based on a request made in passing at the end of a brief without complying with local rules or in any way indicating what changes might be made. *See In re Baycol Prod. Litig.*, 732 F.3d 869, 880 n.8 (8th Cir. 2013).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.  Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 40] is GRANTED.

2.  Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 43] is GRANTED.

3.  Plaintiff Haji Osman Salad's First Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017                                s/ Joan N. Ericksen
                                                     JOAN N. ERICKSEN
                                                     United States District Judge